# 2006 DTA 82

**TRIBUNAL DE APELACIONES**
**REGIÓN JUDICIAL DE SAN JUAN**
**PANEL VI**

MONA'S, INC.
Recurrida

v.

MIGUEL CABRAL VERAS, *ET ALS*
Peticionarios

Núm. KLCE-2005-00776

San Juan, Puerto Rico, a 10 de mayo de 2006

Panel integrado por su Presidente, el Juez Urgell Cuebas,
y los Jueces Gierbolini y Rodríguez Muñiz

Rodríguez Muñiz, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA EN RECONSIDERACIÓN

Por entender necesario corregir el trámite procesal del caso ante el TPI y por no haberse cometido el segundo error alegado por los Peticionarios, procedemos a emitir esta sentencia en reconsideración. [1]

### I

El 20 de marzo de 1997, Mona's, Inc. presentó demanda sobre incumplimiento de contrato y daños contra Miguel Cabral Veras, American Parking System Inc. y Tomás Tavárez (los Peticionarios).

El 4 de abril de 1997, Mona's, Inc. presentó demanda enmendada en la que alegó lo siguiente. Que el 17 de octubre de 1995, otorgó un contrato de arrendamiento con el co-demandado Cabral sobre una propiedad localizada en la Avenida Ashford 1015, Condado, Puerto Rico. El término del contrato era por cinco (5) años. Mona's Inc. y el co-demandado Cabral discutieron detalladamente el requisito de que la primera pudiera ofrecer a los clientes de su restaurante acceso a suficientes espacios de estacionamiento muy cerca de las facilidades. A tal efecto acordaron que era condición esencial del arrendamiento el uso exclusivo de suficientes espacios de estacionamientos en un referido lote colindante a la propiedad arrendada. También acordaron que se reservarían cuarenta (40) espacios en el referido lote para el uso exclusivo de los clientes del restaurante. El 21 de diciembre de 1995, Cabral, en su capacidad de presidente de American Parking, confirmó este acuerdo

mediante carta suscrita ante notario. Para el mes de abril de 1996, los clientes de Mona's, Inc. le informaron a la gerencia y al personal de los graves problemas con el uso de los estacionamientos en el lote, toda vez que no se estaban reservando los cuarenta (40) espacios para el uso exclusivo de dichos clientes. El estacionamiento se alquilaba a clientes que no eran del restaurante. Ante esta situación, Mona's, Inc. exigió que se reservaran los cuarenta (40) espacios de estacionamiento para sus clientes, según lo acordado con el co-demandado Cabral. No obstante, los Peticionarios continuaron incumpliendo con dicho compromiso.

Mona's, Inc. sostuvo que la falta de disponibilidad de estacionamiento se reflejó de inmediato en una dramática disminución en las ventas del restaurante. Reclamó la cantidad de seiscientos mil dólares ($600,000) por las pérdidas sufridas en el negocio desde el mes de abril de 1996. También reclamó la cantidad de doscientos mil dólares ($200,000) por concepto de las mejoras permanentes que realizó en el local.

El 30 de mayo de 1997, los Peticionarios presentaron *"Contestación a Demanda Enmendada"*. En lo pertinente, instaron reconvención en la que alegaron que Mona's, Inc. no había pagado los cánones de arrendamiento y que la deuda ascendía a más de sesenta mil dólares ($60,000).

El 25 de noviembre de 1997, el co-demandado Cabral presentó Moción de Sentencia Sumaria la cual fue declarada *"...sin lugar en esta etapa. Se señala vista evidenciaria para el 1ro de diciembre de 1998 a las 10:30 a.m."*, véase Resolución emitida por el TPI el 8 de junio de 1998, notificada el 9 del mismo mes y año.

El 1ro de diciembre de 1998, el TPI comenzó la vista evidenciaria a los fines de determinar el alcance vinculante de la comunicación escrita ante notario el 21 de diciembre de 1995 a la luz del contrato entre las partes y demás documentos. Ese día, el TPI dispuso que cualquier otro asunto dependería del resultado de esa primera etapa y que, de tener que continuar con la prueba de daños, el Tribunal reglamentaría los procedimientos y designaría un perito del Tribunal.

Concluida la presentación de la prueba de la parte demandante, se decretó un receso hasta el 5 de febrero de 1999.

El 5 de febrero de 1999, los Peticionarios, incluyendo a Cabral, presentaron en corte abierta una Moción de Non Suit Bajo las Disposiciones de la Regla 39.2 (c). El TPI le concedió diez (10) días a Mona's, Inc. para presentar su posición.

Luego de varios trámites interlocutorios, el 23 de octubre de 2001, el TPI emitió Sentencia en el caso y declaró *"con lugar"* la moción de *"non suit"* presentada por el co-demandado Cabral y *"sin lugar"* la solicitud de *"non suit"* presentada por American Parking System y Tomás Tavárez. El TPI desestimó también la demanda presentada contra los co-demandados desconocidos identificados como Fulano de Tal y Compañía de Seguro.

El 25 de junio de 2002, notificada el 28 de junio de 2002, el antiguo Tribunal de Circuito de Apelaciones revocó la sentencia del TPI y devolvió el caso al foro de origen para la continuación de los procedimientos.

El 4 de octubre de 2002, el Tribunal Supremo de Puerto Rico emitió Resolución declarando *"no ha lugar"* la petición de *certiorari* presentada por los Peticionarios. El Mandato correspondiente fue notificado el 24 de octubre de 2002.

Luego de que la Jueza que presidía el caso se abstuviera *motu propio* de intervenir en el mismo, otro Juez de instancia señaló una conferencia sobre el estado procesal del caso.

143

El *"status conference"* se celebró el 8 de diciembre de 2003. El TPI resolvió:

*"..[Q]ue la médula de la controversia es si se pactó que los estacionamientos fueran parte o no del contrato de arrendamiento y si la comunicación fue parte del contrato de arrendamiento escrito o sólo una carta que se produjo para que se cumpliera con los requisitos de ARPE, por lo que ante esa situación prefiere escuchar de nuevo la prueba de la parte demandante y se podría dejar pendiente la prueba de daños. El licenciado Cruz Soto [2] acogió la sugerencia del Tribunal, no así el licenciado Hernández Rodríguez [3] quien manifestó que la prueba de la parte demandante fue desfilada, quien está satisfecha (sic) con los procedimientos que se llevaron a cabo, que sería oneroso y que sería darle una segunda oportunidad a la parte demandada.*

*Escuchados (sic) las argumentaciones de los abogados comparecientes, el Tribunal indicó, entre otras cosas, que la cuestión central a la controversia es una de credibilidad, serían sólo dos días para desfilar la prueba, no sería tan oneroso y no sería igual para el Tribunal leer una transcripción o una exposición narrativa que escuchar la prueba, por lo que deja señalada la vista en su fondo para los días 22 y 23 de junio de 2004...".* Minuta de la vista del 8 de diciembre de 2003, a la página 2.

El 22 de junio de 2004, la nueva representación legal de Mona's, Inc. indicó al TPI que a base de la trayectoria del caso y de la determinación del Tribunal Apelativo, lo que restaba era la prueba de daños. El abogado de los Peticionarios no estuvo de acuerdo y el TPI decidió que se escucharía nuevamente la prueba y señaló conferencia con antelación al juicio para el 16 de agosto de 2004 y juicio en su fondo para el 1ro y 8 de septiembre de 2004.

El 16 de diciembre de 2004, Mona´s, Inc. presentó Moción de Sentencia Sumaria en la que sostuvo que los Peticionarios estaban contractualmente obligados a proveerle los cuarenta (40) espacios de estacionamientos para su uso exclusivo durante la vigencia del contrato de arrendamiento. Acompañó su solicitud con la trascripción de la vista evidenciaria del 1 de diciembre de 1998 y la carta de 21 de diciembre de 1995 suscrita bajo juramento por el co-demandado Cabral.

Transcurridos otros trámites interlocutorios y de la suspensión del juicio según programado, el 17 de diciembre de 2004, se celebró una vista de *"pre-trial"*. Aunque la Minuta de ese día es confusa, tal parece que la representante legal de Mona's, Inc. anunció que había presentado el día antes una moción de sentencia sumaria por lo que el TPI re-señaló la conferencia con antelación al juicio para el 11 de abril de 2005.

El 11 de abril de 2005, los Peticionarios presentaron Moción en Oposición a Sentencia Sumaria. En lo pertinente, señalaron que existía controversia de hechos en cuanto a las declaraciones de Cabral. Alegadamente, éste aceptó que sí había suscrito la carta del 21 de diciembre de 1995; sin embargo, sostuvo que habían acordado verbalmente que tenían que negociar el aspecto económico del uso exclusivo de los estacionamientos, lo cual no se hizo. Mientras Mona's, Inc. sostuvo que Cabral no había condicionado el uso de los estacionamientos.

Por otro lado, los Peticionarios señalaron que Mona's, Inc. presentó la solicitud de sentencia sumaria luego de presentar su prueba y antes de que ellos presentaran la suya. Añadieron que las Reglas de Procedimiento Civil disponen que la moción de sentencia sumaria será notificada a la parte contraria con diez (10) días de anticipación a la fecha señalada para la vista.

El 22 de abril de 2005, notificada el 27 de abril de 2005, el TPI emitió una resolución denominada Sentencia Parcial [4] en la que declaró *"ha lugar"* la solicitud de Sentencia Sumaria. Dicho foro concluyó que la carta del 21 de diciembre de 1995 en efecto constituia una obligación entre las partes y era complementaria al contrato de arrendamiento. Por lo tanto, los Peticionarios se habían obligado a proveer cuarenta (40)

estacionamientos para uso exclusivo de Mona's, Inc. durante la vigencia del contrato de arrendamiento cuya tarifa sería pagada por los clientes del negocio que utilizaran dichos estacionamientos.

El 9 de mayo de 2005, los Peticionarios presentaron Moción de Reconsideración.

El 10 de mayo de 2005, el TPI acogió la Moción de Reconsideración y le ordenó a Mona's, Inc. que se expresara en un término de diez (10) días.

Posteriormente, el 19 de mayo de 2005, notificada el 23 del mismo mes y año, el Tribunal declaró *"no ha lugar"* la Moción de Reconsideración.

Inconforme con lo resuelto, los Peticionarios presentaron recurso de *certiorari* y señalaron la comisión de los siguientes errores:

*"A. ERRÓ EL TRIBUNAL DE INSTANCIA AL DETERMINAR QUE PROCEDE UNA SENTENCIA SUMARIA CUANDO EXISTE UNA CONTROVERSIA SUSTANCIAL DE LA INTENCIÓN SOBRE SI UN DOCUMENTO TUVO EL ALCANCE DE NOVAR EL CONTRATO.*

*B. ERRÓ EL TRIBUNAL DE INSTANCIA AL PERMITIR QUE PROCESALMENTE SE PRESENTARA UNA SENTENCIA SUMARIA PARCIAL LUEGO DE QUE TAN SOLO LA PARTE DEMANDANTE PRESENTE SU PRUEBA."*

## II

La Regla 36.1 de Procedimiento Civil expresa lo siguiente sobre la sentencia sumaria:

*"Una parte que trate de obtener un remedio mediante demanda, reconvención, demanda contra coparte, demanda contra tercero o sentencia declaratoria, podrá, en cualquier momento después de haber transcurrido veinte (20) días a partir de la fecha en que se emplazare al demandado, o después que la parte contraria le haya notificado una moción basada o no en declaraciones juradas, para que se dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación solicitada."* 32 L.P.R.A. Ap. III, R. 36.1

Así mismo, la Regla 36.3 expone el procedimiento mediante el cual debe presentarse dicha moción:

*"La moción se notificará a la parte contraria con no menos de diez (10) días de anticipación a la fecha señalada para la vista, la parte contraria podrá notificar contradeclaraciones juradas. La sentencia solicitada se dictará inmediatamente si las alegaciones, [deposiciones], contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hubiere, demostraren que no hay controversia real sustancial en cuanto a ningún hecho material y que como cuestión de derecho debe dictarse sentencia sumaria a favor de la parte promovente. Podrá dictarse sentencia sumaria de naturaleza interlocutoria resolviendo cualquier controversia entre cualesquiera partes que sea separable de las controversias restantes. Dicha sentencia podrá dictarse a favor o en contra de cualquier parte en el pleito."* 32 L.P.R.A. Ap. III, R. 36.3

La sentencia sumaria es un mecanismo extraordinario y discrecional que procede cuando la parte promovente le demuestra al tribunal que el juicio en su fondo es innecesario. El propósito principal de esta regla es promover una solución justa, rápida y económica de la litigación cuando no exista una genuina controversia de hechos. *E.L.A. v. Code Vázquez*, __ D.P.R. __, **2005 J.T.S. 55**, Opinión de 13 de abril de 2005, a las páginas 1108-1109; *Vera Morales v. Bravo Colón*, 161 D.P.R.___, **2004 J.T.S. 40**, a la página 744, Opinión de 27 de febrero de 2004; *Luán Investment Corp v. Rexach Construction Co., Inc.*, 152 D.P.R. 652, 655 (2000); *Management Administration Services Corp. v. E.L.A.*, 152 D.P.R. 599, 609-610 (2000). Se podrá dictar sentencia sumaria si de las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas,

en unión a las declaraciones juradas, si las hubiere, surge que no hay controversia real sustancial en cuanto a ningún hecho material y como cuestión de derecho debe dictarse sentencia a favor de la parte promovente. Regla 36.3 de las de Procedimiento Civil. Por lo tanto, se concederá cuando la evidencia que se presente con la moción establezca con claridad la existencia de un derecho.

El tribunal, al considerar una moción de sentencia sumaria: (1) analizará tanto los documentos que acompañen la moción en solicitud de la sentencia sumaria, como los documentos incluidos en la oposición y aquellos documentos que obren en el expediente del tribunal; (2) analizará los hechos de la forma más favorable para la parte que se opone; (3) determinará si el oponente controvirtió algún hecho material o si hay alegaciones de la demanda que no han sido controvertidas o refutadas en forma alguna por los documentos; (4) presumirá ciertos los hechos no controvertidos, *Col. Ing. Agrim. P.R. v. A.A.A.,* 131 D.P.R. 735, 781 (1992); (5) hará un concienzudo examen de la situación de hechos para quedar convencido, hasta donde sea posible, de que tiene ante sí toda la verdad sobre los hechos; y (6) emitirá sentencia según proceda en derecho. Sin embargo, los tribunales no deberán utilizar el mecanismo procesal de sentencia sumaria en los siguientes casos: (1) cuando se trate de un caso complejo; (2) cuando esté envuelto el interés público; (3) cuando haya elementos subjetivos, de intención, o negligencia, *Jusino et als. v. Walgreens,* 155 D.P.R. __, **2001 J.T.S. 154,** a la página 374, Opinión de 1ro de noviembre de 2001; o (4) cuando el factor credibilidad sea esencial. Por su propia naturaleza, ciertas controversias no son aconsejables resolverlas mediante sentencia sumaria debido a que, difícilmente pueda reunirse ante el tribunal toda la verdad de los hechos a través de declaraciones juradas o deposiciones. En dichos casos, la credibilidad juega un papel esencial y para llegar a la verdad, el litigante depende en gran parte de lo que extraiga del contrario durante el juicio. *Soto v. Hotel Caribe Hilton,* 137 D.P.R. 294, 301 (1994).

Al determinar si la Regla 36 de Procedimiento Civil, 32 L.P.R.A. Ap. III, es el vehículo apropiado para disponer total o parcialmente de una demanda, el Tribunal Supremo ha expresado que el principio rector debe ser el sabio discernimiento, porque dicho recurso mal utilizado puede prestarse para despojar a un litigante de su día en corte, principio elemental del debido proceso de ley. *Management Administration Services Corp. v. E. L.A., supra,* a las páginas 610-611; *Roig Com. Bank v. Rosario Cirino,* 126 D.P.R. 613, 617-618 (1990). *"El objetivo de aligerar la tramitación de un caso no puede derrotar el principio fundamental de todo proceso ante un tribunal: alcanzar una solución justa." PFZ Props., Inc. v. Gen. Acc. Ins. Co.,* 136 D.P.R. 881, 912 (1994).

Al emitir sentencia sumaria, no podemos poner en peligro o lesionar los intereses de las partes. Por eso, si existe la más mínima duda en cuanto a cuáles son los hechos, la parte tiene derecho a un juicio plenario. *Roth v. Lugo, supra,* a las páginas 396-397. Cualquier duda sobre la existencia de una controversia de hechos *bona fide* debe ser resuelta contra la parte que solicita la sentencia sumaria. *Management Administration Services Corp. v. E.L.A., supra,* a la página 610.

### III

Como primer error, los Peticionarios alegaron que el TPI erró al determinar que procedía una sentencia sumaria cuando existía controversia de hecho en cuanto a si la intención era que la carta del 21 de diciembre de 1995 tuviera el alcance de novar el contrato de arrendamiento.

Conforme los hechos del caso, se suscribió un contrato de arrendamiento el 17 de octubre de 1995. Posteriormente, el 21 de abril de 1995, el co-demandado Cabral otorgó una carta suscrita ante notario en la cual le reservó cuarenta (40) estacionamientos para el restaurante. Sin embargo, lo cierto es que existe controversia de hechos en cuanto a los testimonios del co-demandado y del Sr. Carabarín (Presidente de Mona's, Inc.). Toda vez que el co-demandado Cabral admitió haber suscrito una carta bajo juramento en la cual le garantizaba el uso exclusivo de 40 estacionamientos al restaurante Mona's, Inc. Sin embargo, dicha carta condicionó ese asunto a un acuerdo verbal de que la parte demandante se sentaría a negociar el costo de esa exclusividad, lo cual nunca hizo. Por otra parte, el señor Carabarín indica que el señor Cabral nunca le condicionó el uso exclusivo de los estacionamientos. Lo antes expuesto refleja sin duda la existencia de testimonios encontrados. Ciertamente

tenemos un caso en donde se manifiesta un problema de intención y credibilidad.

Según ya indicamos, uno de los casos en donde no se deberá utilizar el mecanismo procesal de sentencia sumaria es cuando haya elementos subjetivos, de intención, o negligencia, o cuando el factor credibilidad sea esencial. *Jusino et als. v. Walgreens*, 155 D.P.R. __, **2001 J.T.S. 154**, Opinión de 1ro de noviembre de 2001, a la página 374. Este es precisamente el caso de autos. Por su propia naturaleza, esta controversia de hecho no es aconsejable resolverla mediante sentencia sumaria debido a que, difícilmente pueda reunirse ante el tribunal toda la verdad de los hechos a través de declaraciones juradas o deposiciones. En dichos casos, la credibilidad juega un papel esencial y para llegar a la verdad, el litigante depende en gran parte de lo que extraiga del contrario durante el juicio. *Soto v. Hotel Caribe Hilton*, *supra*, a la página 301.

A tenor con lo anterior, forzoso es colegir que el TPI erró al determinar que procedía una sentencia sumaria aun cuando existía controversia de hechos esenciales en el caso.

## IV

En su segundo error, los Peticionarios señalaron que el TPI incidió al permitir que se presentara una solicitud de sentencia sumaria luego de que solamente Mona's, Inc. presentara su prueba.

Según surge de los hechos procesales del caso, el 1ro de diciembre de 1998, el TPI celebró una vista evidenciaria. Luego de que la parte demandante presentó su prueba, el TPI decretó un receso hasta el 5 de febrero de 1999.

El 5 de febrero de 1999, los Peticionarios, incluyendo a Cabral, presentaron en corte abierta una moción de *"non suit"*.

Continuados los procedimientos ante el TPI, el 23 de octubre de 2001, dicho foro emitió Sentencia en la que declaró *"con lugar"* una moción de *"non suit"* presentada por el co-demandado Cabral y *"sin lugar"* la solicitud de *"non suit"* presentada por American Parking System y Tomás Tavárez. El 25 de junio de 2002, el Tribunal de Circuito de Apelaciones revocó la sentencia del TPI y devolvió el caso al foro de origen para la continuación de los procedimientos. El 4 de octubre de 2002, el Tribunal Supremo de Puerto Rico emitió Resolución declarando *"no ha lugar"* la petición de *certiorari* presentada por los Peticionarios.

Devuelto el caso y estando nuevamente ante la consideración del TPI, la Jueza que originalmente presidía los procedimientos se abstuvo *motu proprio* de intervenir en el mismo. En vista de lo anterior, se asignó un nuevo Juez quien, a base de la trayectoria del caso, decidió que escucharía nuevamente la prueba y señaló conferencia con antelación al juicio para el 16 de agosto de 2004 y juicio en su fondo para el 1ro y 8 de septiembre de 2004.

El 16 de diciembre de 2004, Mona's, Inc. presentó moción de sentencia sumaria. Posteriormente, el 17 de diciembre de 2004, el TPI celebró vista de *"pre-trial"* en la que Mona's, Inc. notificó sobre la moción que había presentado el día anterior, por lo que dicho foro re-señaló la vista de conferencia con antelación al juicio para el 11 de abril de 2005.

Conforme a la Regla 64 de Procedimiento Civil, 32 L.P.R.A. Ap. III, *"[s]i por razón de muerte, enfermedad, o por cualquier otra razón, un juez no pudiere continuar entendiendo en un asunto, otro juez podrá actuar en su lugar; pero si éste se convenciere de que no puede desempeñar dichos deberes, sin la celebración de un nuevo juicio sobre todos o parte de los hechos o sin oír nuevamente a algún testigo, podrá tomar las medidas que fueren necesarias para resolver el pleito."* Una lectura de esta regla revela que la misma contempla que el juez ordene la celebración de un nuevo juicio, pero solamente si concluye que no

147

**puede resolver de otra forma.**

En el presente caso, el TPI decidió comenzar desde el principio con el juicio y no tomar en consideración para la resolución final del caso la vista evidenciaria previamente celebrada. Por lo tanto, para todos los efectos legales, Mona's, Inc. presentó su solicitud de sentencia sumaria en tiempo hábil para ello, pues el juicio en sus méritos no había comenzado. A tenor con lo anterior, concluimos que no se cometió el segundo error alegado.

**V**

Por los fundamentos expuestos en la parte III de esta Sentencia, se expide el auto de *certiorari* y se revoca la resolución apelada. Se ordena la continuación de los procedimientos en el caso.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Laura M. Vélez Vélez
Secretaria del Tribunal de Apelaciones

**ESCOLIOS 2006 DTA 82**

**1.** En lo único que varía la sentencia emitida por este Tribunal el 28 de febrero de 2006, es en lo enfatizado en negrillas, lo cual fue añadido en esta sentencia en reconsideración.

**2.** Abogado de los Peticionarios.

**3.** Abogado de Mona's, Inc.

**4.** En los casos que el TPI quiere que su sentencia parcial se convierta en una final en cuanto a menos de la totalidad de las reclamaciones o partes incluidas en el pleito, debe concluir y expresar en la sentencia parcial que: (1) no existe razón para posponer, dictar sentencia sobre tales reclamaciones o partes hasta la resolución total del pleito, y (2) ordenar expresamente que se registre la sentencia.